TRACY L. WILKISON
Acting United States Attorney
JERRY C. YANG
Assistant United States Attorney
Chief, Riverside Branch Office
NATASHA HANEY (Cal. Bar No. 331375)
Assistant United States Attorney
Riverside Branch Office
    3403 Tenth Street, Suite 200
    Riverside, California 92501
    Telephone: (951) 276-6144
    Facsimile: (951) 276-6202
    E-mail:   Natasha.Haney@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ED CR No. 20-00603-JAK |
|      Plaintiff, | PLEA AGREEMENT FOR DEFENDANT JEANETTE BERNARDETTE PAREDEZ |
|        v. | |
| JEANETTE BERNARDETTE PAREDEZ, | |
|      Defendant. | |

1.    This constitutes the plea agreement between JEANETTE BERNARDETTE PAREDEZ ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

a.    At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts 5 and 11 of the indictment in United States v. Jeanette Bernardette Paredez, ED

CR No. 20-00603-JAK, which charge defendant with mail fraud, in violation of 18 U.S.C. § 1341, 2(b), and making and subscribing to a false income tax return, in violation of 26 U.S.C. § 7206(1), 2(b).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Agree that all court appearances, including her change of plea hearing and sentencing hearing, may proceed by video-teleconference ("VTC") or telephone, if VTC is not reasonably available, so long as such appearances are authorized by Order of the Chief Judge 20-186 or another order, rule, or statute.  Defendant understands that, under the Constitution, the United States Code, the Federal Rules of Criminal Procedure (including Rules 11, 32, and 43), she may have the right to be physically present at these hearings. Defendant understands that right and, after consulting with counsel, voluntarily agrees to waive it and to proceed remotely. Defense counsel also joins in this consent, agreement, and waiver. Specifically, this agreement includes, but is not limited to, the following:

i.   Defendant consents under Section 15002(b) of the CARES Act to proceed with her change of plea hearing by VTC or telephone, if VTC is not reasonably available.

ii.   Defendant consents under Section 15002(b) of the CARES Act to proceed with her sentencing hearing by VTC or telephone, if VTC is not reasonably available.

iii. Defendant consents under 18 U.S.C. § 3148 and Section 15002(b) of the CARES Act to proceed with any hearing regarding alleged violations of the conditions of pretrial release by VTC or telephone, if VTC is not reasonably available.

f. Not commit any crime or any act constituting obstruction of justice; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

g. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

h. Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

i. At or before the time of sentencing, satisfy any and all restitution/fine obligations based on ability to pay by delivering a certified check or money order to the Fiscal Clerk of the Court in the amount of $1,105,513.99, to be held until the date of sentencing and, thereafter, applied to satisfy defendant's restitution/fine balance. Payments may be made to the Clerk, United States District Court, Fiscal Department, 255 East Temple Street, 11th Floor, Los Angeles, California 90012.

j. Ability to pay shall be assessed based on the Financial Disclosure Statement, referenced below, and all other relevant information relating to ability to pay.

k. Defendant agrees that any and all restitution/fine obligations ordered by the Court will be due in full and immediately. The government is not precluded from pursuing, in excess of any

3

payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

l.    Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 N. Los Angeles St., Suite 7516, Los Angeles, CA 90012.

m.    Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

n.    Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

o.    Not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

p.    Agree to and not oppose the imposition of a three-year term of supervised release.

3.    Defendant admits that defendant received $807,741.80 of unreported income for the calendar years 2013 through 2019. Defendant agrees that:

a.    Defendant will file, prior to the time of sentencing, amended returns for the years subject to the above admissions, correctly reporting unreported income; will, if requested to do so by the Internal Revenue Service, provide the Internal Revenue Service with information regarding the years covered by the returns; will pay to the Fiscal Clerk of the Court at or before sentencing all

4

additional taxes and all penalties and interest assessed by the Internal Revenue Service on the basis of the returns; and will promptly pay to the Fiscal Clerk of the Court all additional taxes and all penalties and interest thereafter determined by the Internal Revenue Service to be owing as a result of any computational error(s).  Payments may be made to the Clerk, United States District Court, Fiscal Department, 255 East Temple Street, Room 1178, Los Angeles, California 90012.

b.    Nothing in this agreement forecloses or limits the ability of the Internal Revenue Service to examine and make adjustments to defendant's returns after they are filed.

c.    Defendant will not, after filing the returns, file any claim for refund of taxes, penalties, or interest for amounts attributable to the returns filed in connection with this plea agreement.

d.    Defendant is liable for the fraud penalty imposed by the Internal Revenue Code, 26 U.S.C. § 6663, on the understatements of tax liability for 2013 through 2019.

e.    Defendant gives up any and all objections that could be asserted to the Examination Division of the Internal Revenue Service receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

f.    Defendant will sign closing agreements with the Internal Revenue Service contemporaneously with the signing of this plea agreement, permitting the Internal Revenue Service to assess and collect the total sum of $180,027 for the tax years 2013 through 2019, which comprises the tax liabilities, as well as assess and

1   collect the civil fraud penalty for each year and statutory interest,
2   on the tax liabilities, as provided by law.

3                        THE USAO'S OBLIGATIONS

4        4.   The USAO agrees to:

5             a.   Not contest facts agreed to in this agreement.

6             b.   Abide by all agreements regarding sentencing contained
7   in this agreement.

8             c.   At the time of sentencing, move to dismiss the
9   remaining counts of the indictment as against defendant.  Defendant
10  agrees, however, that at the time of sentencing the Court may
11  consider any dismissed charges in determining the applicable
12  Sentencing Guidelines range, the propriety and extent of any
13  departure from that range, and the sentence to be imposed.

14            d.   At the time of sentencing, provided that defendant
15  demonstrates an acceptance of responsibility for the offenses up to
16  and including the time of sentencing, recommend a two-level reduction
17  in the applicable Sentencing Guidelines offense level, pursuant to
18  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
19  additional one-level reduction if available under that section.

20            e.   Recommend that defendant be sentenced to a term of
21  imprisonment no higher than the low end of the applicable Sentencing
22  Guidelines range, provided that the offense level used by the Court
23  to determine that range is 16 or higher and provided that the Court
24  does not depart downward in offense level or criminal history
25  category.  For purposes of this agreement, the low end of the
26  Sentencing Guidelines range is that defined by the Sentencing Table
27  in U.S.S.G. Chapter 5, Part A.

28

f.    Should the Court sentence defendant to a term of imprisonment, recommend that defendant not be required to self-surrender to serve her sentence until on or after April 1, 2021, unless defendant violates the conditions of her bond.

5.    Because the justice system is facing an unprecedented crisis through the backlog of cases, the parties agree that the defendant is entitled to a two-level variance as recognition of defendant's early acceptance of responsibility, which will lessen the burden on the court system by: (1) waiving any right to presence and pleading guilty at the earliest opportunity by VTC (or telephone, if VTC is not reasonably available); (2) waiving any right to presence and agreeing to be sentenced by VTC (or telephone, if VTC is not reasonably available) should the Central District of California's General Order allow for it; (3) agreeing to appear at all other times by VTC or telephone; and (4) waiving most appellate rights.

## NATURE OF THE OFFENSES

6.    Defendant understands that for defendant to be guilty of the crime charged in count 5, that is, mail fraud, in violation of 18 U.S.C. § 1341, the following must be true:

a.    Defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

b.    The statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

c.   Defendant acted with the intent to defraud; that is, the intent to deceive and cheat; and

d.   Defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.

7.   Defendant understands that for defendant to be guilty of the crime charged in counts 11, that is, making and subscribing to a false income tax return, in violation of 26 U.S.C. § 7206(1), the following must be true:

a.   Defendant signed and filed a tax return that she knew contained false information as to a material matter;

b.   The return contained a written declaration that it was being signed subject to the penalties of perjury; and

c.   In filing the false tax return, defendant acted willfully.

## PENALTIES AND RESTITUTION

8.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1341 is: 30 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 26 U.S.C. § 7206(1) is: three years' imprisonment, a one-year period of supervised release; a fine of $100,000; and a mandatory special assessment of $100.

10.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 23 years' imprisonment, a three-year period of supervised release; a

fine of $250,000 or twice the gross gain or gross loss resulting from the offense charged in count 5, whichever is greatest, plus a fine of $100,000 for the offense charged in count 11; and a mandatory special assessment of $200.

11.  Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution due to Cal Poly Pomona Foundation, Inc. is approximately $925,486.99, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

12.  Defendant understands and agrees that the Court: (a) may order defendant to pay restitution in the form of any additional taxes, interest, and penalties that defendant owes to the United States based upon counts 6 and 11; and (b) must order defendant to pay the costs of prosecution, which may be in addition to the statutory maximum fine stated above.

13.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.   Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

14.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that she is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.   Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.   Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

15.   Defendant and her counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.   Defendant may also be denied United States citizenship and admission to the United States in the future.

Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including her attorney or the Court, can predict to an absolute certainty the effect of her conviction on her immigration status.  Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her pleas may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

16.   Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 18 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

*Introduction*

From approximately 2000 to February 2020, defendant was employed by the Cal Poly Pomona Foundation, Inc. ("CPPF") in Los Angeles County.  Defendant served as an accounting specialist for the Kellogg West Conference Center and Hotel ("Kellogg West"), a facility that CPPF owned and used for conventions and events, also in Los Angeles County.  Defendant's responsibilities as an accounting specialist

1   included receiving invoices from Kellogg West vendors, verifying the

2   invoices, and authorizing payment of the invoices.  Defendant was

3   then responsible for ensuring that the invoices were entered into the

4   CPPF processing system that generated payments for those invoices.

5   *Scheme to Defraud*

6   Beginning in July 2010 and continuing through February 2020, in

7   Los Angeles County, defendant, knowingly and with intent to defraud,

8   devised, participated in, and executed a scheme to defraud CPPF as to

9   material matters, and to obtain money from CPPF, by means of

10   materially false and fraudulent pretenses, representations, and

11   promises, and the concealment of material facts.

12   The fraudulent scheme operated and was carried out, in

13   substance, in the following manner:

14   • Defendant entered, or caused to be entered, her mother,

15   A.D., into the CPPF processing system as a Kellogg West vendor.

16   Defendant generated fraudulent invoices stating that A.D. had

17   performed services for Kellogg West, which was owned and operated by

18   CPPF, when, in fact, A.D. had not performed any such services for

19   either Kellogg West or CPPF.  Defendant authorized payments on those

20   fraudulent invoices and entered the invoices into the CPPF processing

21   system that generated payments on the invoices.  Defendant took hard

22   copies of the fraudulent invoices intended for payment to A.D. to the

23   CPPF Accounting Department.

24   • In reliance on the fraudulent invoices, the CPPF Accounting

25   Department generated checks drawn from a Wells Fargo Bank checking

26   account ("CPPF Wells Fargo account") and made payable to A.D.

27   ("fraudulent checks").  Defendant picked up the fraudulent checks

28

from the CPPF Accounting Department, or the CPPF Accounting Department mailed the fraudulent checks to defendant at Kellogg West.

- Defendant would then have the fraudulent checks mailed to A.D.'s address in Rowland Heights, California, where she would pick them up.  Defendant forged A.D.'s signature to endorse the fraudulent checks.  Defendant deposited the fraudulent checks with the forged endorsements into a joint JPMorgan Chase Bank, N.A. checking account, ending in 9900 and held by defendant and A.D. ("Chase Bank Account 9900").

- Defendant used the funds deposited in Chase Bank Account 9900 for her own mortgage payments, credit card payments, cash ATM withdrawals, and personal purchases.

As a result of this scheme, checks totaling approximately $925,486.99 were deposited in Chase Bank Account 9900.

On or about January 15, 2016, defendant mailed or caused the mailing of a check in the amount of $2,874.55, made payable to A.D., and drawn from the CPPF Wells Fargo account.

On or about January 26, 2017, defendant mailed or caused the mailing of a check in the amount of $2,897.03, made payable to A.D., and drawn from the CPPF Wells Fargo account.

On or about January 16, 2018, defendant mailed or caused the mailing of a check in the amount of $2,997.81, made payable to A.D., and drawn from the CPPF Wells Fargo account.

On or about January 11, 2019, defendant mailed or caused the mailing of a check in the amount of $4,998.55, made payable to A.D., and drawn from the CPPF Wells Fargo account.

On or about January 22, 2020, defendant mailed or caused the mailing of a check in the amount of $4,998.99, made payable to A.D., and drawn from the CPPF Wells Fargo account.

*Personal Income Tax Returns for Years 2013 Through 2019*

In addition, in San Bernardino County, defendant willfully made and subscribed to materially false United States Individual Income Tax Returns, using either Form 1040 or 1040A (the "tax returns"), for calendar years 2013 through 2019, which defendant verified by written declarations, stated that the declarations were made under penalty of perjury, and filed and caused to be filed the tax returns with the Internal Revenue Service.  In making, subscribing, and filing the tax returns, defendant did not believe them to be true and correct as to every material matter contained therein.  Specifically, defendant falsely claimed in the tax returns, which she filed jointly with her husband, that her total income received during the indicated calendar years was the amount indicated below, when, as defendant then knew, her total income received during the indicated calendar years was substantially more than the amount of total income she claimed, as indicated below:

| Year | Total Income Reported | Total Income Received | Unreported Income |
|------|----------------------|----------------------|-------------------|
| 2013 (tax return filed on 2/7/2014) | $33,181.00 (reported in Form 1040A, line ??) | $93,787.62 | $60,606.62 |
| 2014 (tax return filed on 2/6/2015) | $34,428.00 (reported in Form 1040A, line 15) | $100,880.12 | $66,452.12 |
| 2015 (tax return filed on 2/12/2016) | $81,331.00 (reported in Form 1040A, line 1) | $161,818.51 | $80,487.51 |

| 2016<br>(tax return filed<br>on 2/10/2017) | $83,788.00<br>(reported in<br>Form 1040,<br>line 22) | $185,554.70 | $101,766.70 |
|---|---|---|---|
| 2017<br>(tax return filed<br>on 2/23/2018) | $92,383.00<br>(reported in<br>Form 1040,<br>line 22) | $212,715.65 | $120,332.65 |
| 2018<br>(tax return filed<br>on 2/21/2019) | $90,366.00<br>(reported in<br>Form 1040,<br>line 6) | $243,603.12 | $153,237.12 |
| 2019<br>(tax return filed<br>on 2/21/2020) | $99,054.00<br>(reported in<br>Form 1040,<br>line 7(b)) | $323,913.08 | $224,859.08 |
| Total | 514,531.00 | $1,322,272.80 | $807,741.80 |

In total, defendant underreported her income by approximately $807,741.80 on her returns, resulting in a tax loss of approximately $180,027.

SENTENCING FACTORS

17. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

///

///

///

18.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

Base Offense Level:                7        U.S.S.G. § 2B1.1(a)(1)

Loss exceeded $550,000          +14       U.S.S.G. § 2B1.1(b)(1)(H)

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

19.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

20.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

21.   Defendant understands that by pleading guilty, defendant gives up the following rights:

        a.   The right to persist in a plea of not guilty.

        b.   The right to a speedy and public trial by jury.

        c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

        d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

        e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

i.   Further, defendant knowingly and voluntarily waives any rights and defenses defendant may have under the Excessive Fines Clause of the Eight Amendment to the United States Constitution to the forfeiture of property in this proceeding or any related civil proceeding, special or other assessment, and any order of restitution.

<u>WAIVER OF APPEAL OF CONVICTION</u>

22.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.   Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

23.   Defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and

impose any portion of the sentence; (b) the term of imprisonment imposed by the Court, provided it is no more than the high end of the Sentencing Guidelines range calculated by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $1,105,513.99; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d).

24.   Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, that newly discovered evidence purportedly supports defendant's innocence, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

25.   The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the USAO gives

up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $1,105,513.99.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

26. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## EFFECTIVE DATE OF AGREEMENT

27. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

28. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of

defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

29. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under

the United States Constitution, any statute, Rule 410 of the Federal
Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal
Procedure, or any other federal rule, that the statements or any
evidence derived from the statements should be suppressed or are
inadmissible.

<u>COURT AND UNITED STATES PROBATION AND</u>

<u>PRETRIAL SERVICES OFFICE NOT PARTIES</u>

30.  Defendant understands that the Court and the United States
Probation and Pretrial Services Office are not parties to this
agreement and need not accept any of the USAO's sentencing
recommendations or the parties' agreements to facts or sentencing
factors.

31.  Defendant understands that both defendant and the USAO are
free to: (a) supplement the facts by supplying relevant information
to the United States Probation and Pretrial Services Office and the
Court, (b) correct any and all factual misstatements relating to the
Court's Sentencing Guidelines calculations and determination of
sentence, and (c) argue on appeal and collateral review that the
Court's Sentencing Guidelines calculations and the sentence it
chooses to impose are not error, although each party agrees to
maintain its view that the calculations in paragraph 17 are
consistent with the facts of this case.  While this paragraph permits
both the USAO and defendant to submit full and complete factual
information to the United States Probation and Pretrial Services
Office and the Court, even if that factual information may be viewed
as inconsistent with the facts agreed to in this agreement, this
paragraph does not affect defendant's and the USAO's obligations not
to contest the facts agreed to in this agreement.

32.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.   Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## NO ADDITIONAL AGREEMENTS

33.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

///

1

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

34. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
Acting United States Attorney

_____                    2/18/21
NATASHA HANEY                              _____
Assistant United States Attorney            Date

_____                    2/12/2021
JEANETTE BERNARDETTE PAREDEZ               _____
Defendant                                   Date

_____                    2/12/2021
RANDOLPH MELENDEZ                          _____
Attorney for Defendant                      Date
JEANETTE BERNARDETTE PAREDEZ

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or

23

1  representations of any kind have been made to me other than those
2  contained in this agreement.  No one has threatened or forced me in
3  any way to enter into this agreement.  I am satisfied with the
4  representation of my attorney in this matter, and I am pleading
5  guilty because I am guilty of the charges and wish to take advantage
6  of the promises set forth in this agreement, and not for any other
7  reason.

_____          _____
JEANETTE BERNARDETTE PAREDEZ              Date
Defendant


## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Jeanette Bernardette Paredez's attorney.  I have carefully
and thoroughly discussed every part of this agreement with my client.
Further, I have fully advised my client of her rights, of possible
pretrial motions that might be filed, of possible defenses that might
be asserted either prior to or at trial, of the sentencing factors
set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
provisions, and of the consequences of entering into this agreement.
To my knowledge: no promises, inducements, or representations of any
kind have been made to my client other than those contained in this
agreement; no one has threatened or forced my client in any way to
enter into this agreement; my client's decision to enter into this
agreement is an informed and voluntary one; and the factual basis set
forth in this agreement is sufficient to support my client's entry of
guilty pleas pursuant to this agreement.

_____          _____
RANDOLPH MELENDEZ                         Date
Attorney for Defendant
JEANETTE BERNARDETTE PAREDEZ

24