1   TRACY L. WILKISON
    Acting United States Attorney
2   SCOTT M. GARRINGER
    Assistant United States Attorney
3   Chief, Criminal Division
    JERRY C. YANG
4   Assistant United States Attorney
    Chief, Riverside Branch Office
5   BENJAMIN J. WEIR (Cal. Bar No. 312418)
    Assistant United States Attorney
6   Riverside Branch Office
         3403 Tenth Street, Suite 200
7        Riverside, California 92501
         Telephone:  (951) 276-6228
8        Facsimile:  (951) 276-6202
         E-mail:     Benjamin.Weir@usdoj.gov
9
    Attorneys for Plaintiff
10  UNITED STATES OF AMERICA

11                    UNITED STATES DISTRICT COURT

12              FOR THE CENTRAL DISTRICT OF CALIFORNIA

13  UNITED STATES OF AMERICA,          ED CR No. 20-603-JAK

14            Plaintiff,               UNITED STATES' SENTENCING POSITION

15            v.                       SENTENCING DATE: July 15, 2021, at
                                       8:30am
16  JEANETTE BERNARDETTE PAREDEZ,

17            Defendant.

18

19        Plaintiff United States of America, by and through its counsel

20  of record, the Acting United States Attorney for the Central District

21  of California and Assistant United States Attorney Benjamin J. Weir,

22  hereby files its Sentencing Position.

23        The government's Sentencing Position is based upon the attached

24  memorandum of points and authorities, the files and records in this

25  case, the Presentence Report, and any other evidence or argument that

26  the Court may wish to consider at the time of sentencing.

27  ///

28

1    The government reserves the right to file a response to any

2  sentencing position filed or submitted by defendant and to file any

3  supplemental sentencing position(s) that may be necessary.

4   Dated: July 1, 2021                Respectfully submitted,

5                                      TRACY WILKISON
                                       Acting United States Attorney
6
                                       SCOTT M. GARRINGER
7                                      Assistant United States Attorney
                                       Chief, Criminal Division
8
                                       JERRY C. YANG
9                                      Assistant United States Attorney
                                       Chief, Riverside Branch Office
10

11                                     /s/ Benjamin J. Weir
                                       BENJAMIN J. WEIR
12                                     Assistant United States Attorney

13                                     Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I. INTRODUCTION**

Defendant Jeanette Bernardette Paredez ("defendant") was employed by the Cal Poly Pomona Foundation, Inc. ("CPPF") from 2000 through 2020 as an accounting specialist.  As part of her job, she was responsible for receiving, verifying, and authorizing payment of invoices.  Defendant created fraudulent invoices, which were issued in the name of defendant's mother, that were purportedly received for work performed on CPPF's behalf.  However, no such work was ever performed.  Nevertheless, defendant approved payment on the invoices and caused CPPF to make $925,486.99 in fraudulent payments to defendant's mother.  Defendant received the bulk of these funds.

In addition to bilking CPPF, defendant failed to pay federal income taxes on her ill-gotten gains.  For tax years 2013 through 2019, defendant underreported her income by a total of $807,741.80.  This resulted in a tax loss to the federal government of $180,027.

Defendant was indicted on December 2, 2020, and subsequently pleaded guilty to violating 18 U.S.C. § 1341 (Mail Fraud) and 26 U.S.C. § 7206(1) (Making and Subscribing to a False Income Tax Return).  The United States Probation and Pretrial Services Office ("PPSO") has issued a Presentence Report ("PSR") (Dkt 29).  The PSR calculates a total offense level of 20, a criminal history category of I, and a guidelines sentencing range of 33 to 41 months' imprisonment. (Dkt 29 at 3).

The government has no objections to the facts contained within the PSR, the guideline calculations, or the criminal history category.  However, the government additionally recommends a two-level downward variance for early acceptance during a global pandemic

1    which lessened the burden on the judicial system.

2         If the Court grants the government's request for a two-level

3    variance, the new total offense level would be 18.  This would result

4    in a guideline range sentence of 27 to 33 months' imprisonment.  The

5    United States respectfully recommends that the Court impose a

6    sentence of 27 months' imprisonment, restitution to the CPPF in the

7    amount of $925,486.99, restitution to the Internal Revenue Service in

8    the amount of $180,027 (for a total restitution amount of

9    $1,105,513.99), three years of supervised release, and the mandatory

10   $200 special assessment.

11   **II.   BACKGROUND**

12        On December 2, 2020, defendant was indicted on five counts of

13   violating 18 U.S.C. § 1341 (Mail Fraud), and six counts of violating

14   26 U.S.C. § 7206(1) (Making and Subscribing to a False Income Tax

15   Return) (Dkt. 1).  On February 18, 2021, defendant's plea agreement

16   was filed with the Court.  (Dkt. 2.)  On March 4, 2021, defendant

17   pleaded guilty to counts 5 (mail fraud) and 11 (False Income Tax

18   Return), which carry maximum sentences of 20 and 3 years,

19   respectively. (Dkt. 29 ¶ 1.)

20        During the change of plea hearing, and in the factual basis of

21   the plea agreement, defendant admitted that:

22        From approximately 2000 to February 2020, defendant was employed

23   by CPPF in Los Angeles County.  Defendant served as an accounting

24   specialist for the Kellogg West Conference Center and Hotel ("Kellogg

25   West"), a facility that CPPF owned and used for conventions and

26   events, also in Los Angeles County.  Defendant's responsibilities as

27   an accounting specialist included receiving invoices from Kellogg

28   West vendors, verifying the invoices, and authorizing payment of the

2

1    invoices.  Defendant was then responsible for ensuring that the

2    invoices were entered into the CPPF processing system that generated

3    payments for those invoices.

4                            Scheme to Defraud

5         Beginning in July 2010 and continuing through February 2020, in

6    Los Angeles County, defendant, knowingly and with intent to defraud,

7    devised, participated in, and executed a scheme to defraud CPPF as to

8    material matters, and to obtain money from CPPF, by means of

9    materially false and fraudulent pretenses, representations, and

10   promises, and the concealment of material facts.

11        The fraudulent scheme operated and was carried out, in

12   substance, in the following manner:

13        • Defendant entered, or caused to be entered, her mother,

14   A.D., into the CPPF processing system as a Kellogg West vendor.

15   Defendant generated fraudulent invoices stating that A.D. had

16   performed services for Kellogg West, which was owned and operated by

17   CPPF, when, in fact, A.D. had not performed any such services for

18   either Kellogg West or CPPF.  Defendant authorized payments on those

19   fraudulent invoices and entered the invoices into the CPPF processing

20   system that generated payments on the invoices.  Defendant took hard

21   copies of the fraudulent invoices intended for payment to A.D. to the

22   CPPF Accounting Department.

23        • In reliance on the fraudulent invoices, the CPPF Accounting

24   Department generated checks drawn from a Wells Fargo Bank checking

25   account ("CPPF Wells Fargo account") and made payable to A.D.

26   ("fraudulent checks").  Defendant picked up the fraudulent checks

27   from the CPPF Accounting Department, or the CPPF Accounting

28   Department mailed the fraudulent checks to defendant at Kellogg West.

- Defendant would then have the fraudulent checks mailed to A.D.'s address in Rowland Heights, California, where she would pick them up.  Defendant forged A.D.'s signature to endorse the fraudulent checks.  Defendant deposited the fraudulent checks with the forged endorsements into a joint JPMorgan Chase Bank, N.A. checking account, ending in 9900 and held by defendant and A.D. ("Chase Bank Account 9900").

- Defendant used the funds deposited in Chase Bank Account 9900 for her own mortgage payments, credit card payments, cash ATM withdrawals, and personal purchases.

As a result of this scheme, checks totaling approximately $925,486.99 were deposited in Chase Bank Account 9900.

On or about January 15, 2016, defendant mailed or caused the mailing of a check in the amount of $2,874.55, made payable to A.D., and drawn from the CPPF Wells Fargo account.

On or about January 26, 2017, defendant mailed or caused the mailing of a check in the amount of $2,897.03, made payable to A.D., and drawn from the CPPF Wells Fargo account.

On or about January 16, 2018, defendant mailed or caused the mailing of a check in the amount of $2,997.81, made payable to A.D., and drawn from the CPPF Wells Fargo account.

On or about January 11, 2019, defendant mailed or caused the mailing of a check in the amount of $4,998.55, made payable to A.D., and drawn from the CPPF Wells Fargo account.

On or about January 22, 2020, defendant mailed or caused the mailing of a check in the amount of $4,998.99, made payable to A.D., and drawn from the CPPF Wells Fargo account.

1
       <u>Personal Income Tax Returns for Years 2013 Through 2019</u>

2
    In addition, in San Bernardino County, defendant willfully made

3
and subscribed to materially false United States Individual Income

4
Tax Returns, using either Form 1040 or 1040A (the "tax returns"), for

5
calendar years 2013 through 2019, which defendant verified by written

6
declarations, stated that the declarations were made under penalty of

7
perjury, and filed and caused to be filed the tax returns with the

8
Internal Revenue Service.  In making, subscribing, and filing the tax

9
returns, defendant did not believe them to be true and correct as to

10
every material matter contained therein.  Specifically, defendant

11
falsely claimed in the tax returns, which she filed jointly with her

12
husband, that her total income received during the indicated calendar

13
years was the amount indicated below, when, as defendant then knew,

14
her total income received during the indicated calendar years was

15
substantially more than the amount of total income she claimed, as

16
indicated below:

| Year | Total Income Reported | Total Income Received | Unreported Income |
|---|---|---|---|
| 2013 (tax return filed on 2/7/2014) | $33,181.00 (reported in Form 1040A) | $93,787.62 | $60,606.62 |
| 2014 (tax return filed on 2/6/2015) | $34,428.00 (reported in Form 1040A, line 15) | $100,880.12 | $66,452.12 |
| 2015 (tax return filed on 2/12/2016) | $81,331.00 (reported in Form 1040A, line 1) | $161,818.51 | $80,487.51 |
| 2016 (tax return filed on 2/10/2017) | $83,788.00 (reported in Form 1040, line 22) | $185,554.70 | $101,766.70 |
| 2017 (tax return filed on 2/23/2018) | $92,383.00 (reported in Form 1040, line 22) | $212,715.65 | $120,332.65 |

5

| | | | |
|---|---|---|---|
| 2018 (tax return filed on 2/21/2019) | $90,366.00 (reported in Form 1040, line 6) | $243,603.12 | $153,237.12 |
| 2019 (tax return filed on 2/21/2020) | $99,054.00 (reported in Form 1040, line 7(b)) | $323,913.08 | $224,859.08 |
| Total | 514,531.00 | $1,322,272.80 | $807,741.80 |

In total, defendant underreported her income by $807,741.80 on her returns, resulting in a tax loss of $180,027.

## III.  SENTENCING GUIDELINES CALCULATION

The PPSO has determined that defendant has a total offense level of 20, which is based upon a base offense level of seven pursuant to U.S.S.G. § 2B1.1(a)(1), plus 14 levels based on the loss amount pursuant to U.S.S.G. § 2B1.1(b)(1)(H), plus two levels for her abusing a position of trust pursuant to U.S.S.G. § 3B1.3, minus three levels for acceptance of responsibility under U.S.S.G. § 3E1.1. (PSR ¶¶ 31-42).  The PPSO also determined that defendant has zero criminal history points, which results in a Criminal History Category I.  (PSR ¶¶ 44-47.)  The government concurs with the PPSO's offense level calculation and the criminal history category.  As discussed below, however, the United States additionally moves for a two level reduction for defendant's early acceptance of responsibility during a global pandemic.  Should the court grant this request, the total offense level would be 18.

## IV.  THE GOVERNMENT'S POSITION

### A.  ABUSE OF POSITION OF TRUST ENHANCEMENT

U.S.S.G. § 3B1.3 provides that a plus two enhancement applies if a defendant abused a position of private trust.  Application Note 1 states that this applies if the defendant has "professional or

6

1   managerial discretion," which is shown when the defendant is "subject

2   to significantly less supervision than employees whose

3   responsibilities are primarily non-discretionary in nature."

4        Here, defendant had been given a position of trust regarding her

5   employer's finances and took advantage of that trust.  Defendant was

6   employed as an accounting specialist. (Dkt. 29 ¶ 13.)  She was

7   responsible for verifying invoices and authorizing payment for those

8   invoices.  (Id. ¶ 14.)  After she authorized payment, invoices were

9   entered into an accounting system that would generate payment for

10  those invoices.  (Id.)  As part of the scheme, defendant created

11  fictious invoices, entered them into the accounting system, and

12  approved payment for those fraudulent invoices.  Defendant stated in

13  her interview with the probation offer that she was able to operate

14  her scheme because she was "given so much authority" and was "not

15  being monitored."  (Id. ¶ 24.)

16       The plus two enhancement for abuse of position of trust should

17  be applied.  Defendant was given authority over her employer's

18  coffers, and readily took advantage of that authority.

19       **B.   THE RECOMMENDED SENTENCE IS REASONABLE GIVEN THE HISTORY
         AND CHARACTERISTICS OF THE DEFENDANT**

20

21       Defendant's criminal conduct was serious and protracted.  She

22  designed, and carried out, a scheme that bilked her employer (a non-

23  profit, public-benefit charitable-educational organization) out of

24  nearly $1 million.  The scheme was not quick; defendant engaged in

25  this conduct for nearly ten years.  She also failed to report her

26  ill-gotten gains as income on her federal income tax returns for tax

27  years 2013 through 2019.  She thus shirked paying $180,027 in federal

28  income taxes over these six years.

1   In mitigation, defendant has no previous criminal history.  She

2 also readily admitted her conduct shortly after indictment, thereby

3 significantly saving judicial and prosecution resources during a

4 global pandemic.

5       **C.   Restitution**

6       Defendant agreed to make full restitution to the CPPF

7 ($925,486.99) and the Internal Revenue Service ($180,027) in her plea

8 agreement for a total amount of $1,105,513.99.   (Dkt. 22

9 ¶¶ 2(i); 11.)   Restitution should thus be award in these amounts. 18

10 U.S.C. § 3663A; U.S.S.G. § 5E1.1.

11      **D.   Two-Level Variance for Early Acceptance During the Global
             Pandemic**

12

13      Based on the agreement between the parties (Dkt. No. 99 ¶ 4(e))

14 and the nature of defendant's acceptance of responsibility, the Court

15 should apply a two-level downward variance to further reduce

16 defendant's total offense level.  This variance is appropriate

17 because of defendant's early acceptance of responsibility at a time

18 when the justice system was in an unprecedented crisis associated

19 with a global pandemic and a backlog of cases.

20 **V. CONCLUSION**

21      The government respectfully recommends that the Court impose a

22 sentence of 27 months' imprisonment, three years of supervised

23 release, and a mandatory special assessment of $200.

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, Stephanie Ascencio, declare:

That I am a citizen of the United States and a resident of or employed in Riverside County, California; that my business address is the Office of United States Attorney, 3403 Tenth Street, Suite 200, Riverside, California 92501; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:  **UNITED STATES' SENTENCING POSITION**

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☐ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

☐ By hand delivery, addressed as follows:

☒ By email delivery, as follows: **SEE ATTACHED**

☐ By messenger, as follows:

☐ By Federal Express, as follows:

This Certificate is executed on **June 1, 2021,** in Riverside, California.  I certify under penalty of perjury that the foregoing is true and correct.

/s/
_____
Stephanie Ascencio
Legal Assistant

1

**ATTACHMENT**

2
U.S. Probation Officer Maytee Zendejas
maytee_zendejas@cacp.uscourts.gov

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1